Gwendolyn PHILLIPS, Administratrix of the Estate of Robyn Jorjean Williams, Deceased; Gwendolyn Phillips, Administratrix of the Estate of Jerome I. Campbell, Deceased; Gwendolyn Phillips, Administratrix of the Estate of Alphonso Crawford, Deceased; Neil Curtis Williams, a Minor, by his Guardian and Next Friend, Gwendolyn Phillips, Appellants

v.

CRICKET LIGHTERS, Swedish Match, S.A., Pinkerton Tobacco Company, Pinkerton Group, Inc., Pinkerton Group, Inc., t/a d/b/a Cricket USA, Cricket S.A., Poppell, B.V., Wilkinson Sword/Cricket Inc., Wilkinson Sword, Inc., NDC Corporation and National Development Corporation t/a Shenango Park Associates, DNC Asset Management Inc., Regional Sales Inc.,

---

Universal Match Company a/k/a Universal Match Corporation, Swedish Match A.B., Cricket B.V. Inter–Match S.A. Feudor, S.A. Schick Netherland, B.V. Warner–Lambert Holland, B.V., Appellees.

Pennsylvania Trial Lawyers Association, Amicus, Product Liability Advisory Council, Inc., Amicus BIC, Inc., a Pennsylvania Corporation, Amicus.

Superior Court of Pennsylvania.

Argued Oct. 3, 2000.
Filed June 10, 2004.

Henry Sewinsky, Sharon, for Phillips, appellant.

Carl A. Eck, Louis Long, Pittsburgh, for Cricket Lighters, appellee.

D. Bruce Kehoe, Indianapolis, IN, Amicus Curiae.

John M. Humphrey, Williamsport, Amicus Curiae.

Before: HUDOCK, MUSMANNO and GANTMAN, JJ.

MUSMANNO, J.

¶ 1 Gwendolyn Phillips, as administratrix of the estates of Robyn Jorjean Williams, Jerome I. Campbell, and Alphonso Crawford, and as guardian of Neil Curtis Williams, a minor, (collectively, "Phillips"), appealed from the Order granting summary judgment in favor of the Appellees set forth above (collectively, "Cricket"). The Pennsylvania Supreme Court has remanded this matter for this Court's determination of issues based upon Phillips's claim that Cricket breached the implied warranty of merchantability and the claim for punitive damages.

¶ 2 The Pennsylvania Supreme Court summarized the factual and procedural history of the instant case as follows:

On the night of November 30, 1993, two year old Jerome Campbell ("Jerome") pulled down the purse belonging to his mother, Robyn Williams ("Robyn"), from the top of the family's refrigerator. Jerome retrieved a Cricket disposable butane cigarette lighter from his mother's purse. It is uncontested that this butane lighter lacked any child-resistant feature. Jerome's five year old brother, Neil Williams ("Neil"), observed Jerome use the lighter to ignite some linens. The fire spread to the rest of the family's apartment. After Neil was unsuccessful in his attempts to rouse his mother [from sleep], he was able to get to a window and began screaming; a neighbor rescued him. Tragically, Robyn, Jerome, and another minor child of Robyn's, Alphonso Crawford, died in the fire.

Gwendolyn Phillips ["Phillips"], as administratrix of the estates of the three decedents and as guardian of Neil, insti-

tuted this action against the manufacturers and distributors of the Cricket lighter [collectively, "Cricket"].[1] In her complaint, [Phillips] raised, *inter alia*, claims of design defect sounding in both strict liability and negligence, negligent infliction of emotional distress, breach of the implied warranty of merchantability, and punitive damages. These claims were all predicated on [Phillips's] allegations that [Cricket] should have manufactured and distributed a lighter that had childproof features.

[Cricket] filed for summary judgment. The trial court found in favor of [Cricket], and dismissed all claims against [Cricket]. As to the design defect claim sounding in strict liability, the trial court noted that [Phillips] was required to establish that the Cricket lighter was unsafe for its intended use. Tr. ct. slip op. at 16–17 (citing *Azzarello v. Black Bros. Co., Inc.*, 480 Pa. 547, 391 A.2d 1020 (1978)). The trial court reasoned that "the term 'intended use' necessarily entails the participation of the 'intended user.'" *Id.* at 17 (citation omitted). Since a two year old child was not the intended user of a cigarette lighter, the trial court found that [Cricket] could not be liable in strict liability. In addition, the court reasoned that where a product is found to be not defective for strict liability purposes, then a design defect claim sounding in negligence also must fail; it thus dismissed the negligent design claim. *Id.* at 30. The trial court

also dismissed the negligent infliction of emotional distress claim, reasoning that such a claim must be dismissed because [Phillips] had failed to state a cause of action for negligence. *Id.* at 36. As to the breach of warranty claim, the trial court found that [Phillips] had failed to show that the Cricket lighter was not fit for its ordinary purposes of producing a flame. *Id.* at 31–32. Finally, the court stated that since there was no evidence of wanton or willful misconduct on [Cricket's] part, then the punitive damages claim must also be dismissed. *Id.* at 38.[2]

On appeal, [Phillips] presented five issues to the Superior Court, claiming that summary judgment should not have been entered on her breach of warranty, negligent infliction of emotional distress, or design defect claims sounding in strict liability or negligence. The Superior Court reversed the trial court's entry of summary judgment on all five of these claims.[3]

As to the strict liability claim, the Superior Court emphatically rejected the trial court's holding that for strict liability purposes, a product must be designed to be safe only for the "intended user." *Phillips v. Cricket,* 2001 PA Super 109, 773 A.2d 802, 810–13 (Pa.Super.2001). Rather, the court posited that the product must be safe for its intended use, which it found was to create a flame, when used by any user, either intended or unintended. *Id.* at

---

1. [Phillips's] complaint also named as defendants the owners and managers of the apartment building in which Robyn resided with her family (collectively referred to as the "NDC defendants"). [Phillips] ultimately negotiated a release with the NDC defendants; the NDC defendants are not involved in this appeal.

2. The trial court also entered summary judgment on several other claims. As [Phillips]

has not challenged the entry of summary judgment on these claims, we need not detail the trial court's disposition of them.

3. The Superior Court noted that [Phillips] had not appealed the entry of summary judgment on several other claims, as it was compelled to affirm that portion of the trial court's order dismissing those claims.

813. The [Superior Court] concluded that the Cricket lighter was unsafe because its failure to incorporate a child safety feature allowed it to be operated by an unintended user, namely a small child, thus exposing the child and others to a grave risk of harm. It therefore reversed the trial court's entry of summary judgment on the design defect claim sounding in strict liability.

As to the negligent design claim, the Superior Court noted that the trial court had entered summary judgment because the strict liability claim had been dismissed; the Superior Court reasoned that since it had found that the trial court's determination on the strict liability claim [was] erroneous, it must perforce reverse the entry of summary judgment on the negligent design claim. Concomitantly, the Superior Court reversed the entry of summary judgment on the negligent infliction of emotional distress claim as the trial court had dismissed this claim on the basis that the negligence claim had failed.

The Superior Court also reasoned that it must reverse dismissal of the punitive damages claim. In reviewing this issue, the Superior Court expressed the belief that the trial court had dismissed this claim solely because [Phillips] had no other viable causes of action, and that a punitive damages claim may survive only where there are other viable tort actions. The Superior Court concluded that since it had reinstated four other tort claims raised by [Phillips], then the trial court's entry of summary judgment on the punitive damages claim must be reversed.

Finally, the Superior Court did expressly state that it was reversing the trial court's entry of summary judgment on the breach of warranty claim. Yet, the Superior Court provided no analysis as to how it arrived at this conclusion.

[Cricket] filed a petition for allowance of appeal, which we granted. This appeal then followed.

*Phillips v. Cricket Lighters*, 576 Pa. 644, 841 A.2d 1000, 1002–04 (2003) (footnotes in original).

¶ 3 On allowance of appeal, the Pennsylvania Supreme Court affirmed in part, and reversed in part, the Order of the Superior Court.[4] Specifically, the Supreme Court affirmed the Superior Court's reinstatement of Phillips's negligence and negligent infliction of emotional distress claims. However, the Supreme Court reversed the portion of this Court's Order that reinstated Phillips's strict liability claim of a design defect. Additionally, the Supreme Court reversed this Court's reinstatement of Phillips's claim of a breach of the implied warranty of merchantability. The Supreme Court remanded the case, directing this Court to provide our reasoning for reinstatement of the breach of implied warranty claim. Finally, the Supreme Court reversed this Court's reinstatement of the punitive damages claim. The Supreme Court directed this Court to reconsider that claim on remand. Accordingly, we now address Phillips's claim of a breach of the implied warranty of merchantability and the claim for punitive damages.

■ ¶ 4 Phillips first claims that the trial court erred in granting summary judgment on its cause of action for Cricket's breach of the implied warranty of merchantability. In its Opinion, the trial court explained its rationale as follows:

**4.** Mr. Chief Cappy expressed the view of the majority of the Court on the issues of negligent infliction of emotional distress, breach of the implied warranty of merchantability, and punitive damages.

The ordinary purpose for which disposable butane lighters are used is to produce a flame. The evidence reveals that the lighter was fit for such a purpose and did not malfunction in any respect. Additionally, in *Altronics of Bethlehem, Inc. v. Repco, Inc.*, 957 F.2d 1102, 1105 (1992), the Third Circuit Court of Appeals noted that under Pennsylvania law, a plaintiff must show a defect in the goods purchased in order to establish a breach of the implied warranty of merchantability. Such has not been demonstrated in the instant case. As the Cricket lighter apparently functioned normally and was of a merchantable quality, we will grant Cricket's Motion for summary judgment on the warranty claim.

Trial Court Opinion, 12/1/98, at 31–32. We disagree with the trial court's interpretation of the implied warranty of merchantability.

¶ 5 Summary judgment is proper where the pleadings, depositions, affidavits and materials of record show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Weiner v. American Honda Motor Co.*, 718 A.2d 305, 307 (Pa.Super.1998). We view the record in the light most favorable to the opposing party and resolve all doubts and reasonable inferences about the existence of an issue of fact in favor of the nonmoving party. *Telega v. Security Bureau, Inc.*, 719 A.2d 372, 375 (Pa.Super.1998).

Upon appellate review, we are not bound by the trial court's conclusions of law, but may reach our own conclusions. In reviewing a grant of summary judgment, the appellate Court may disturb the trial court's order only upon an error of law or an abuse of discretion. The scope of review is plenary and the appellate Court applies the same standard for summary judgment as the trial court.

*Grandelli v. Methodist Hosp.*, 777 A.2d 1138, 1144 (Pa.Super.2001).

■ ¶ 6 The implied warranty of merchantability arises by operation of law under the Pennsylvania Commercial Code ("PCC"), 13 Pa.C.S.A. § 2314. The warranty serves to protect buyers from loss where the goods purchased are below commercial standards or unfit for the buyer's purpose. *Borden, Inc. v. Advent Ink Co.*, 701 A.2d 255, 258 (Pa.Super.1997).

■ ¶ 7 The implied warranty of merchantability, set forth in section 2314 of the PCC provides, in relevant part, as follows:

(a) **Sale by merchant.**—Unless excluded or modified[,] ... a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind....

(b) **Merchantability standards for goods.**—

Goods to be merchantable must be at least such as:

. . .

(3) are fit for the ordinary purposes for which such goods are used.

13 Pa.C.S.A. § 2314. In describing the implied warranty of merchantability, our Pennsylvania Supreme Court has stated:

The concept of "merchantability" does not require that the goods be the best quality, or the best obtainable, but it does require that they have an inherent soundness which makes them suitable for the purpose for which they are designed, **that they be free from significant defects**, that they perform in the way that goods of that kind should perform, and that they be of reasonable quality within expected variations and for the ordinary purpose for which they

are used. The implied warranty of merchantability, as set forth in the [PCC], is "a warranty that the goods will pass without objection in the trade and are fit for the ordinary purposes for which such goods are used."

*Gall v. Allegheny County Health Department*, 521 Pa. 68, 555 A.2d 786, 789 (1989) (emphasis added). However, a product need not be defective, for purposes of strict products liability, in order to be unfit for ordinary purposes. *See Azzarello*, 391 A.2d at 1026 (recognizing that "defective condition" is a term of art invoked when strict liability is appropriate).

¶ 8 In this case, Phillips claims that the Cricket lighter that started the fire was defective and breached the implied warranty of merchantability because of the absence of childproof features. Cricket counters that the lighter was not defective because it was completely safe for all of those individuals who were intended users. Cricket further asserts that "[a] two-year-old child is incapable of 'using' a disposable butane lighter in the sense the word 'used' is employed in 13 Pa.C.S.A. §§ 2314 and 2318." Brief for Appellees at 6. We disagree with both contentions.

■ ¶ 9 First, we note that Pennsylvania law does not limit the applicability of the implied warranty of merchantability to the product's intended users. Section 2318 of the PCC states as follows:

> Third party beneficiaries of warranties express or implied:
>
> The warranty of a seller whether express or implied extends to any natural person who is in the family or household of his buyer or who is a guest in his home if it is reasonable to expect that such person may use, consume **or be affected by** the goods and who is injured in person by breach of the warranty. A seller may not exclude or limit the operation of this section.

13 Pa.C.S.A. § 2318 (emphasis added). Thus, section 2318 requires only that household members *be affected* by the product. In accordance with section 2318, the warranty of merchantability extends to two-year-old Jerome, a member of the household affected by the product.

¶ 10 In *Hittle v. Scripto–Tokai Corp.*, 166 F.Supp.2d 142 (W.D.Pa.2001), the federal district court of the Western District of Pennsylvania addressed a situation involving similar circumstances. In that case, the plaintiffs' four-year-old-child started a fire that caused the death of another child in the household and injury to the children's mother. Plaintiffs sued the manufacturer of the lighter alleging, *inter alia*, a breach of the implied warranty of merchantability based upon (a) the malfunction of the on/off switch on the lighter, and (b) the lighter's lack of child-resistant safety features. In denying the defendant manufacturer's motion for summary judgment, the federal district court opined that "[a] reasonable jury could conclude, based on the inference of a malfunction of the 'on/off' switch *and the related factual issue of whether the lighter could have been designed to be more child-resistant*, that the Aim 'N Flame was 'defective' and not merchantable." [5] *Id.* at 158 (emphasis added). While we are not bound by the decision of the federal district court, we are guided by its sound reasoning.[6] In

---

**5.** Contrary to Cricket's assertions in its brief, the federal district court did not base its decision solely on the malfunction of the on-off switch. The court also reversed the grant of summary judgment based upon the factual issue of whether the product was defective because of the absence of childproof features.

**6.** *See contra Shouey v. Duck Head Apparel Co.*, 49 F.Supp.2d 413, 429 (M.D.Pa.1999) (holding that the implied warranty of merchanta-

the instant case, a reasonable jury could conclude, based on the factual issue of whether the lighter could have. been designed to be more child-resistant, that the lighter was "defective" and therefore not merchantable.

■ ¶ 11 In addition, we are not per-suaded by Cricket's assertion that a two-year-old child cannot "use" a lighter, or Cricket's reliance on *Erie Ins. Exchange v. Transamerica Ins. Co.*, 516 Pa. 574, 533 A.2d 1363 (1987) in support of this conten-tion. In *Erie Insurance*, the Pennsylva-nia Supreme Court interpreted whether the actions of a three and one-half year old child, in setting a car in motion, con-stituted a "use" of the vehicle under the parents' homeowner's and automobile in-surance policies. The homeowner's policy excluded coverage for damage "arising out of the ownership, maintenance, operation, *use*, loading or unloading" of a motor vehi-cle. *Id.* at 1366 (emphasis added). The automobile insurance policy provided cov-erage when the accident causing damages arose out of "the ownership, maintenance or *use* of the automobile." *Id.* (emphasis added).

¶ 12 In interpreting the term "use," the Supreme Court applied the rules of con-struction of insurance policies. Ultimate-ly, the Supreme Court determined that the child's actions did not constitute a "use" of the vehicle as contemplated by either in-surance policy at issue. The Supreme Court explained:

> Considering the setting, a 3½ year old child … is not capable of "using" an automobile in a rational, purposeful sense within the meaning of the relevant policy provisions. The unwitting actions of a 3½ year old child in putting an automobile in motion is not "use of an automobile" and, is not one of the risks contemplated by the Erie policy or ex-cluded by the Transamerica policy. For one to "use" an automobile in the sense contemplated by the pertinent provi-sions of the insurance policies in ques-tion, the alleged "user" should at least know and understand the uses to which an automobile, as an automobile, may be put. A 3½ year old child, such as Erin Gilbert in this case, does not know how to "use" an automobile.

*Id.* at 1367–68.

¶ 13 Cricket relies upon the above lan-guage in arguing that Jerome did not "use" the lighter, as contemplated by 13 Pa.C.S.A. §§ 2314 and 2318. However, we conclude that the Supreme Court's analy-sis in *Erie Insurance* has no applicability in the instant case.

¶ 14 The instant case does not involve the construction of a term set forth in an insurance policy, or an analysis of the risks contemplated by the insurer in drafting the policy. In addition, we cannot employ the rules for construing insurance con-tracts, or utilize the context of the policy in interpreting 13 Pa.C.S.A. § 2314. Finally, it is arguable that in the instant case, Jerome understood the "use" of the lighter to produce a flame.

¶ 15 As set forth above, a reasonable jury could conclude, based on the factual issue of whether the lighter could have been designed to be more child-resistant, that the lighter was "defective" and there-fore not merchantable. Accordingly, we conclude that the trial court erred in en-tering summary judgment against Phillips on her claim for breach of the implied warranty of merchantability, and we re-verse the judgment on that basis.

bility is not breached where there is no indi-cation that the lighter did anything other than produce a flame and there is no indication that the flame produced was not suitable for lighting a cigarette).

■ ¶ 16 Phillips next claims that the trial court erred in entering summary judgment against her and in favor of Cricket on her claim for punitive damages. In its Motion for summary judgment, Cricket asserted that "[p]unitive damages are not available under the facts of this case and where the lighter at issue was not defective and met or exceeded all applicable safety standards existing at the time of this incident and at the time of its manufacture and sale." Cricket's Motion for Summary Judgment, at ¶ 25. The trial court granted summary judgment, concluding that "there was no wanton or willful misconduct." Trial Court Opinion, 12/1/98, at 38. We disagree.

■ ¶ 17 Punitive damages are awarded to punish a defendant for outrageous acts and to deter him or others from engaging in similar conduct. *Reading Radio, Inc. v. Fink,* 833 A.2d 199, 214 (Pa.Super.2003).

> The standard under which punitive damages are measured in Pennsylvania requires analysis of the following factors: (1) the character of the act; (2) the nature and extent of the harm; and (3) the wealth of the defendant.... Moreover, in Pennsylvania, punitive damages are awarded for outrageous conduct, that is, for acts done with a bad motive or with a reckless indifference to the interests of others. An amount of an award of punitive damages will not be reversed unless it shocks the Court's sense of [conscience].

*Id.* (quotation omitted).

¶ 18 In response to Cricket's Motion for summary judgment, Phillips filed an expert report prepared by John O. Geremia, Ph.D. Contrary to the trial court's determination, Dr. Geremia's report evidenced Cricket's "reckless indifference to the interests of others." *Id.* This Court previously summarized the contents of that report as follows:

> Dr. Geremia has consulted extensively in the area of design and safety of disposable butane lighters. Designers, manufacturers, and distributors of Cricket disposable butane lighters have "been well aware, since at least the early 1970's, that there was a potential significant serious hazard of catastrophic injury and death, particularly to the young, as a result of children utilizing or playing with disposable butane cigarette lighters. Plaintiff's response to Motion for Summary Judgment, Expert Report, 9/25/97, at 3. In fact, Dr. Geremia was involved in preparing a 1973 report to the cigarette lighter industry that discussed the hazards.
>
> * * *
>
> The Consumer Product Safety Commission did a study of fire hazards involving children playing with cigarette lighters and the results were published in September 1987. That study indicated that during 1980–85, an average of 170 people a year died in cigarette lighter fires and of those 170, 120 died in fires started by children playing with cigarette lighters. Most of those victims were young children. In addition, at least 750 people per year were injured from fires caused by children playing with cigarette lighters. The annual cost of child-play lighter fires during that time was $300–375 million dollars, or sixty to seventy-five cents per lighter sold.
>
> Disposable butane lighters were involved in ninety-six percent of the fires in which the type of lighter was known. Dr. Geremia also opined that while lighters may not be intended for children, a lighter is an attractive product for children since it produces a flame and since children are naturally curious about fire.
>
> Finally, Dr. Geremia rendered the opinion that "for many years prior to the

time of the manufacture of the subject Cricket lighter, it was technologically, commercially and economically feasible to manufacture and distribute a reasonably designed child-resistant lighter." *Id.* at 11. He stated that the manufacture and distribution of a child-resistant lighter would have entailed "only a nominal additional cost." *Id.*

*Phillips v. Cricket Lighters,* 773 A.2d at 814. Contrary to the trial court's determination, Phillips's evidence was sufficient to create a jury question regarding whether Cricket's actions exhibited reckless indifference to the interests of others. On this basis, we reverse the trial court's dismissal of Phillips's claim for punitive damages.

¶ 19 Judgment reversed as to the grant of summary judgment on the issues of (a) breach of the implied warranty of merchantability, and (b) punitive damages.