

1994 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

7-22-1994

# Metzgar v. Playskool, Inc.

Precedential or Non-Precedential:

Docket 93-3508

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1994

Recommended Citation

"Metzgar v. Playskool, Inc." (1994). *1994 Decisions.* Paper 90.
http://digitalcommons.law.villanova.edu/thirdcircuit_1994/90

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 1994 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 93-3508

_____

RONALD W. METZGAR
MAUREEN INGRAM, co-administrators of
estate of MATTHEW C. METZGAR, deceased,
                    Appellants

        vs.

PLAYSKOOL INC., a corporation
K MART CORP.,  a corporation

_____

Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. Civ. No. 92-cv-00031J)

_____

Argued
April 11, 1994
Before:  BECKER, MANSMANN and SCIRICA, Circuit Judges.

(Filed July 22, 1994)

_____

Kevin R. Lomupo, Esquire
Gilardi & Cooper
310 Grant Street
808 Grant Building
Pittsburgh, Pennsylvania 15219

Alfred S. Pelaez, Esquire (ARGUED)
Duquesne University School of Law
900 Locust Street
Pittsburgh, Pennsylvania 15282

   COUNSEL FOR APPELLANTS

Edward A. Yurcon, Esquire (ARGUED)
William M. Adams, Esquire
Anstandig, Levicoff & McDyer
2200 Gulf Tower
Pittsburgh, Pennsylvania  15219

   COUNSEL FOR APPELLEES

1

---

## OPINION OF THE COURT

---

MANSMANN, <u>Circuit</u> <u>Judge</u>.

Fifteen month old Matthew Metzgar was tragically asphyxiated to death on a purple half-column Playskool building block. In resolving his parents' civil action against the manufacturer and the retailer of the toy, brought under Pennsylvania's negligence and strict product liability rules of law, the district court entered summary judgment for the defendants on all four counts of the complaint.

We address the district court's application of the traditional risk-utility analysis which the district court utilized in resolving the negligence product liability cause of action. We disagree with the district court on its determination that the statistical risk of injury from the Playskool block to children like Matthew is so small as to preclude a finding of unreasonably defective design. We also address the district court's construction of the "intended user" element of the strict liability cause of action. We reject the district court's determination that the age guideline on the product packaging precludes the manufacturer's liability for safety when used by children, like Matthew, who may be shown to be developmentally within the age category, although chronologically slightly younger. We also reject the district court's dismissal of the failure to warn claims, brought both in strict liability and negligence. We cannot agree that the danger of a small child

2

choking on the block was obvious so as to negate any duty by Playskool to so warn.

                                    I.

On the morning of February 12, 1990, Matthew's father, Ronald, was babysitting Matthew and had placed Matthew, awake and healthy, in his playpen. Ronald left the room for just five minutes and upon his return, he found Matthew lifeless. His efforts to revive his son, after he called "911" and removed the Playskool block lodged in Matthew's throat, were to no avail.

The block which caused Matthew's untimely death is a cylindrical column, 7/8" wide by 1-3/4" long, the smallest block among the 49 brightly colored and variously shaped wood blocks marketed by Playskool, Inc.[0] Playskool did not place any warning of a choking hazard on the box containing the blocks, but clearly and boldly imprinted on the front, back and top of the box are the words, "Ages 1-1/2 - 5." The size and shape of the block satisfied existing federal standards and regulations for risk mitigation and cautionary labeling promulgated and enforced by the Consumer Products Safety Commission, 16 C.F.R. § 1501.4, under the Federal Hazardous Substances Act, 15 U.S.C. §§ 1261-77. The Playskool block also met the small toy and toy part standard established by the American Society for Testing Materials.

On February 6, 1992, Mr. Metzgar and Maureen Ingram, Matthew's mother, filed a complaint against Playskool, Inc. and

---

[0]      The blocks are manufactured and packaged for Hasbro, Inc. by Strauser Manufacturing, Inc. according to Hasbro specifications and are sold under the Playskool name.

K-Mart Corp., the retailer, setting forth essentially four counts under Pennsylvania law:  negligent design, manufacture and sale of a toy block of a size and shape which made the block susceptible of being swallowed and causing a child to choke; strict liability under § 402A of the Restatement (Second) of Torts for manufacturing and selling a toy block in a defective condition, unreasonably dangerous to intended users, which the plaintiffs alleged includes a child of fifteen months; negligent failure to warn of the hazard to children of the toy block; and strict liability for failing to warn of the product hazard potential.  Matthew's parents alleged that the manufacturer's age span recommendation on the box was inadequate to warn of the block's inherent danger.[0]

In ruling upon the defendants' motion for summary judgment, the district court found with regard to the plaintiffs' negligent design and manufacture cause of action, that although the danger of choking was foreseeable, "[t]he historical risk of choking from the Playskool blocks is so small that, even ignoring the issue of parental supervision, the risk from the design as a matter of law is not unreasonable."  District Court Opinion  of Sept. 9, 1993 at A. 21.  The court dismissed this cause of action.  Further, in light of the explicit age designation on the box, the district court found that Playskool did not subjectively intend a fifteen month old child to use this particular Playskool

---

[0]        An additional cause of action based on breach of unspecified express and implied warranties was withdrawn by letter dated April 13, 1993.

4

product. Thus the court also dismissed the plaintiffs' defective design strict liability cause of action, holding that "[i]f the concept of intended use . . . is to retain any meaning whatsoever, it necessarily means that use intended from the point of view of the manufacturer putting a product into the marketplace." District Court Opinion of Sept. 9, 1993 at A. 13 (citing Griggs v. Bic Corp., 981 F.2d 1429 (3d Cir. 1992) (product not defective unless it possesses a feature which renders it unsafe for its intended use); Brantner v. Black & Decker, C.A. No. 93-1J, slip op. at 7-12 (W.D. Pa. Aug. 23, 1993)). Further, reasoning that no warning is necessary where a risk of danger is obvious, the district court concluded as a matter of law that the likelihood of a young child choking on a small block is too obvious for the court to sustain the plaintiffs' failure to warn strict liability and negligence causes of action;[0] (citing Mackowick v. Westinghouse Electric Corp., 525 Pa. 52, 575 A.2d 100, 102 (1990); Dauphin Deposit Bank and Trust Co. v. Toyota Motor Corp., 408 Pa. Super. 256, 596 A.2d 845, 849 (1991)). Thus the district court granted summary judgment in favor of the defendants on all pending claims.

Our review of the district court's summary judgment order is plenary, and we will utilize the same tests and

---

[0] As a preliminary matter, the district court decided that neither the Federal Hazardous Substances Act, 15 U.S.C. §§1261-77, nor general principles of implied preemption, preempt Pennsylvania's labeling or design and manufacturing regulations. The district court's holding on this issue has not been appealed and is not, therefore, before us for review.

standards which the district court was constrained to apply.[0] We will address each cause of action seriatim.

## II.

We are troubled by the district court's summary judgment disposition of the plaintiffs' negligent design and strict liability design defect causes of action. With regard to the negligence claim, the district court properly engaged in a risk-utility analysis. Griggs, 981 F.2d at 1435-36 (negligence law requires balancing of risk in light of social value of interest at stake, and potential harm, against value of conflicting interest) (citing W. Page Keeton et al., Prosser and Keeton on Torts § 31, at 173 (5th ed. 1984); Benson v. Pennsylvania Cent. Transp. Co., 463 Pa. 37, 342 A.2d 393, 397 (1975); Clewell v. Pummer, 384 Pa. 515, 121 A.2d 459, 462 (1956)); see also Kleinknecht v. Gettysburg College, 989 F.2d 1360, 1369-70 (3d Cir. 1993) (the classic risk-utility analysis is used to determine whether a risk is unreasonable in a negligence cause of action). In performing this analysis, the district court relied heavily on the statistical fact that the general population of small children suffer a mortality rate from choking on small toys or toy parts of approximately only one per 720,000 children. We note also that according to Playskool's representative, Charles Fischer, over the past twenty years, the

---

[0] The district court exercised diversity jurisdiction over these claims. 28 U.S.C. § 1332. Our jurisdiction arises from the final order of the district court. 28 U.S.C. § 1291.

Playskool block in question, of which easily hundreds of thousands have been sold, has not generated any complaints of choking deaths or injuries. A. 286; 299. Nevertheless, the plaintiffs' expert, E. Patrick McGuire, reported for the record that in one year studied, 1988, there were eleven deaths due to aspiration of small toys or toy parts by children. A. 79. The record does not indicate the current infant mortality rate due to small toy related asphyxiation, but the plaintiffs submitted a CPSC estimate reported in the House Congressional Record[0] that in each year from 1980-88, an average of 3,200 small children were treated in hospital emergency rooms for toy related ingestion and aspiration injuries. A. 476. The CPSC also reported that between 1980 and 1991, 186 children choked on small toys, toy parts, and other children's products.

We share the district court's concern that without "at least a realistic threshold of risk," District Court Opinion of Sept. 9, 1993 at A. 21, n.10, courts should avoid intrusion into product design by too readily weighing risk-utility factors against the defendant, even in those cases where a grievous injury has been suffered. Nonetheless, we believe that an annual mortality rate of eleven is a "realistic threshold of risk" in this case. The fact that the Playskool purple half-column block has not been a contributor to the infant mortality rate until now may be simply happenstance from which we cannot conclude that the

[0]        138 Cong. Rec. H8264 (daily ed. September 10, 1992) (statement of Rep. Collins concerning bill (H.R. 4706) to amend Consumer Product Safety Act to, among other things, extend authorization of appropriations under the Act).

7

block will be safe for future reasonably foreseeable users.  We note that although the purple half-column was in technical compliance with CPSC and ASTM standards, the block only minimally met the required standards by protruding in length slightly beyond the ASTM test cylinder.  The block's width, however, was slightly narrower than the test cylinder.  It appears that a slight modification to the block design could virtually eliminate the choking potential without detracting from the block's utility.  We do not believe that the evidence demonstrates, therefore, that the risk of a reasonably foreseeable user choking on the block is so relatively small -- measured against the block's decreased utility by modifying its present design -- as to permit summary judgment for the defendants on the basis of a risk-utility analysis.  Therefore, we will vacate the summary judgment order as it pertains to the claim of negligent design.[0]

---

[0]     Judge Scirica would affirm the grant of summary judgment to Playskool on the negligent design claim on the basis of the district court's risk-utility analysis, which noted that the purple block exceeded the CPSC minimum size for toys for children under three.  Where there is utility to the toy's size, the toy is safe for children of certain ages or under supervision, it is accompanied by adequate warnings, and the statistical probability of the risk is extremely low, the risk-utility analysis may preclude a negligent design claim.  Otherwise, it would appear that every marble would be subject to a negligent design claim.  The only evidence on the risk posed by the block consisted of statistics on children's choking injuries and deaths from congressional testimony, but there was no evidence the choking incidents in the statistics involved objects of comparable size to the purple block.  Indeed, Congresswoman Collins cited the statistics as evidence that children were choking on toys that were, unlike the purple block, smaller than the CPSC minimum.  138 Cong. Rec. H8264.

While Judge Becker believes that Judge Scirica's argument has considerable force, he adheres to the opinion of the

8

III.

We turn now to the district court's summary judgment disposition of the plaintiffs' strict liability design defect claim. We quite agree with the district court's reiteration that "a product is not defective unless it possesses `any feature that renders it unsafe for the intended use,'" and that the concept of intended use "`encompasses the participation of an <u>intended user</u>.'" District Court Opinion of September 9, 1993 at A.10 (citing <u>Griggs v. BIC Corp.</u>, 981 F.2d 1429, 1433 (3d Cir. 1992) and <u>Azzarello v. Black Bros. Co.</u>, 480 Pa. 547, 391 A.2d 1020, 1027 (1978)). We are much less certain, however, that Matthew, at age fifteen months, was not an intended user of this particular product. The eighteen month to five year recommendation boldly marked on the Playskool box is not, to our minds, an unequivocal indication that these blocks are unsuitable for use by a child who is just three months shy of eighteen months, particularly given the potential disparities among young children in the relation of their chronological age to their

_____

court because he believes that the statistical evidence concerning the magnitude of the risk of asphyxiation and related injures to children under the age of six may support a finding that all intended and likely users of the blocks are exposed to an unreasonable risk of asphyxiation. That is, to the extent that legally adequate warnings would leave no real market for the product (because, for example, the warning would have to include all children under the age of six and children over the age of six would have no real interest in the blocks), the plaintiffs could prevail on the negligent product design claim. Judge Becker notes in this regard that, were it unreasonable, given the nature of the particular product in light of its intended use, to expect an adult to engage in <u>constant</u> supervision of a child playing with it, a warning that the product should be used only with adult supervision would be legally inadequate.

physical and mental "developmental age."  Moreover, the plaintiffs produced several experts who concluded that Playskool's age guideline pertained to the intended user's developmental stage.[0]

We must emphasize that under Pennsylvania's interpretation of section 402A strict liability,[0] an "intended user" of a product is not so broad a class as to encompass every user reasonably foreseeable to the manufacturer.  Foreseeability pertains to a duty analysis under negligence tort law, but strictly speaking does not form a part of the appropriate analysis under Pennsylvania strict products liability law. Griggs, 981 F.2d at 1435 (". . . the `duty' analysis in strict liability eschews foreseeability as an element").  See also Azzarello, 391 A.2d at 1025; Berkebile v. Brantly Helicopter

---

[0] The plaintiffs submitted three expert reports to the district court, including that of Sylvan E. Stool, M.D., A.69, Theodora Briggs Sweeney, A.70-73, and E. Patrick McGuire.  A.77-81.  All three experts concurred that the age guideline served primarily as a developmental gauge, and did not convey safety hazard information based solely or primarily on the child's chronological age.

[0] In Webb v. Zern, 422 Pa. 424, 220 A.2d 853 (1966), the Pennsylvania Supreme Court adopted the Restatement (2d) Torts Section 402A as the law of Pennsylvania.  Section 402A provides:

> (1) One who sells any product in a defective condition unreasonably dangerous to the user or consumer . . . is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if
>
> (a) the seller is engaged in the business of selling such a product, and
>
> (b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.

<u>Corp.</u>, 462 Pa. 83, 337 A.2d 893, 900 (1975) (plurality opinion) ("Foreseeability is not a test of proximate cause [under strict liability]; it is a test of negligence."); <u>Lewis v. Coffing Hoist Div., Duff-Norton Co.</u>, 515 Pa. 334, 528 A.2d 590, 593 (1987) (". . . negligence concepts [such as foreseeability] have no place in a case based on strict liability").[0]  Furthermore, it is the

[0]     Prior to <u>Griggs</u>, in our reported decisions we did not carefully distinguish the role of foreseeability in negligence and in strict liability, and the concept has become blurred in the two contexts.  See <u>Fleck v. KDI Sylvan Pools, Inc.</u>, 981 F.2d 107, 119 (3d Cir. 1992) ("The inquiry is whether the product is defective for ordinary use and foreseeable misuse"), <u>cert. denied</u>, 113 S.Ct. 1645 (1993); <u>Sheldon v. West Bend Equip. Corp.</u>, 718 F.2d 603, 608 (3d Cir. 1983) (". . . the intended use of a product includes any use which is reasonably foreseeable to the seller"); <u>Schell v. AMF, Inc.</u>, 567 F.2d 1259, 1263 (3d Cir. 1977) ("`. . . whether a particular use of a product is abnormal depends on whether the use was reasonably foreseeable by the seller'") (citing <u>Kuisis v. Baldwin-Lima-Hamilton Corp.</u>, 457 Pa. 321 n.13 (1974)); <u>Eshbach v. W. T. Grant's & Co.</u>, 481 F.2d 940, 943 (3d Cir. 1973) ("`the duty of a manufacturer . . . is limited to foreseeing the probable results of the normal use of the product or a use which can be reasonably anticipated'") (citing <u>Kaczmarek v. Mesta Machine Co.</u>, 463 F.2d 675 at 679 (3d Cir. 1972)).  In <u>Griggs</u>, in attempting to retain the important distinction between negligence and strict liability, we rejected the term "foreseeability" in the context of a strict liability analysis.

    We note some difference in the panel's view here: Judge Mansmann would emphasize <u>Griggs</u>' sensitivity to keeping the terminology of negligence and strict liability distinct, and also reaffirm an objective standard to determine the manufacturer's intent in a strict liability analysis.  See <u>also</u>, <u>Pacheco v. The Coats Co., Inc.</u>, No. 93-1791, Slip op. at 8 (3d Cir. June 6, 1994) (acknowledging that "foreseeability" is a term of negligence, although an objective standard is appropriate to a strict liability analysis of manufacturer's intent).  Judge Becker and Judge Scirica believe that, at least insofar as <u>Griggs</u> rejected a forseeability analysis in context of the intended <u>use</u> (as opposed to the intended <u>user</u>) analysis, <u>Griggs</u> departed from prior Third Circuit caselaw just cited on the role played by foreseeability in strict liability cases, and to that extent carries no precedential weight.  See <u>O. Hommel Co. v. Ferro</u>, 659

court which decides the threshold determination of the product's intended use based upon the parties' averments, and as part of that determination, whether the injured party was an "intended user." Griggs, 981 F.2d at 1432-33. Thus, the district court was obliged to focus on the intent of the manufacturer of the Playskool blocks in determining whether Matthew was an "intended user" for purposes of resolving the summary judgment motion. The court properly reasoned that a "foreseeable user" such as Matthew is not by strict definition coincident with an "intended user." Logic and prudence lend weight to the court's unwillingness to conflate the "intended user" with the "foreseeable user" in strict liability, especially where children are concerned, because so many varied and necessary products are hazards in the unintended but foreseeable hands of children, but cannot be "childproofed" without being rendered significantly less useful or even useless. This is not only true of inherently dangerous products, but is, to some extent, true even of toy products. Children are inherently vulnerable and in many circumstances, the product design cannot replace the adult supervision of a child.

Our concern here pertains to the fact that unlike the circumstances in Griggs involving the use of a BIC lighter by a three year old child -- clearly an unintended user -- here the record shows a lack of clear indication of who exactly the

F.2d 340, 354 (3d Cir. 1981) ("[A] panel of this court cannot overrule a prior panel precedent . . . . To the extent that [the later case] is inconsistent with [the earlier case, the later case] must be deemed without effect."), cert. denied, 455 U.S. 1017, 102 S. Ct. 1711 (1982); Pfeiffer v. School Bd. for Marion Ctr. Area, 917 F.2d 779, 781 (3d Cir. 1990) (same).

12

manufacturer intended to use the Playskool building blocks. Without sufficient evidence demonstrating that Playskool intended that the "Ages 1-1/2 – 5" user recommendation on the box only pertains to children who are chronologically 1-1/2 to 5 years old rather than the broader category of children who are developmentally 1-1/2 to 5 years old, we decline to accept the district court's interpretation of the age guideline indicated on the box as a strict chronological age category of intended users, which would exclude Matthew. It is possible that the indications on the package refer more broadly to the physical and mental aptitude of small children and do not contain any strict chronological age implication. A developmental age category might be shown to include Matthew.

We believe that the "intended user" must be determined in the context of the knowledge and assumptions of the ordinary consumer in the relevant community, at least, as here, in the absence of explicit warnings. Thus, although foreseeability is not a term that should be associated with strict liability, the concept, to the extent it implies an objective test, is not entirely foreign to a strict liability analysis, although it is applied in a more narrow sense than in negligence law. The court's inquiry into the intent of the manufacturer asks what the consumer could reasonably have understood the manufacturer's intent to be. Unless the use giving rise to a strict liability cause of action is a reasonably obvious misuse, or the user a reasonably obvious unintended user, as was the case in Griggs, or unless the particular use or user is clearly warned against, the

13

manufacturer is not obviously exonerated. We do not believe that here Matthew's parents were clearly alerted to the fact that the product presented a special danger to Matthew; nor do we believe that it was objectively unreasonable for them to have assumed that Matthew was an intended user. The plaintiffs' experts testified that the ordinary consumer in the present case would interpret the age guideline to be a developmental age recommendation. Moreover, Charles Fischer, the defendants' witness, testified that the "Ages 1-1/2 - 5" guideline represented the stage in which "the child has the coordination and will derive play value from [the blocks] . . . ," suggesting that those years were chosen for their correspondence to a child's physical and mental developmental age. A. 301. Furthermore, the evidence of record does not establish that the blocks posed a substantially greater risk of choking a fifteen month old than an eighteen month old; thus it may be that, even assuming that Matthew was an unintended user from the subjective perspective of the manufacturer, because it was not shown that the block posed a substantially greater risk to the unintended user, the manufacturer's subjective intent would not in justice be dispositive.

Because we are not convinced that there was sufficient indication to a reasonable consumer that Matthew was not an intended user, we will vacate and remand the summary judgment order as it pertains to the claim of defective design.

IV.

14

We turn finally to the remaining claims brought in both strict liability and negligence on the theory that the defendants failed to warn of the hazard potential of their product. The district court reasoned that the risk of a small child choking on an object such as one of Playskool's smaller blocks is so objectively obvious as to preclude the requirement for a cautionary warning as a constituent of the product design, or the creation of a duty to provide an express warning of that fact. See Dauphin, 408 Pa. Super. 256, 596 A.2d 845, 850 (1991) (Pennsylvania law imposes no duty to warn of obvious risks); Mucowski v. Clark, 404 Pa. Super. 197, 590 A.2d 348 (1991) (standard of obviousness of danger for claim in strict liability is virtually identical for purposes of claim in negligence under Pennsylvania's application of Restatement (Second) Torts § 388). We will vacate the district court's ruling and remand on the ground that the question of obviousness in this case was not a proper subject of summary judgment.

We note that although the standard of obviousness is the same in strict liability and in negligence, the role of the court differs according to the legal theory governing the cause of action. In strict liability, an inadequate warning is a species of product defect, and hence is properly decided initially by the court as a matter of law. Mackowick, 525 Pa. 52, 575 A.2d 100, 102 (1990) ("The determinations of whether a warning is adequate and whether a product is 'defective' due to inadequate warnings are questions of law to be answered by the trial judge.") For a risk to be deemed obvious for purposes of a

15

failure to warn claim, however, there must be general consensus within the relevant community.  We cannot see how the purple Playskool block can be deemed as a matter of law an obvious safety hazard in the eyes of the relevant community, when Playskool itself believed the block was safe for its intended use.  Furthermore, Matthew's parents and his aunt, who purchased the Playskool blocks for Matthew, testified that they did not believe that the product posed an obvious threat of asphyxiation to Matthew.  A. 200-01, 376, 442.  Moreover, the defendant did not proffer any evidence tending to show that the danger of asphyxiation was obvious.

Under a negligence theory, although a failure to warn claim may be defeated if the risk was obvious or known, the question of obviousness is more properly submitted to a jury than disposed on motion for summary judgment.  See Laaperi v. Sears, Roebuck & Co., 787 F.2d 726, 731 (1st Cir. 1986) (whether danger of smoke detector's malfunction was obvious is question for jury); Mucowski v. Clark, 590 A.2d 348, 351 (Pa. Super. 1991) (whether absence of warning is legal cause of injury is usually matter for trier of fact; but court may decide where only reasonable conclusion is that plaintiff's foolhardiness, not lack of warning, legally caused injury).  The court's role in deciding a motion for summary judgment is merely to decide whether there is a genuine issue of material fact for trial.  The district court's dismissal of Metzgar's negligent claim on the basis of its determination that the danger to Matthew was obvious was

16

tantamount to holding that no reasonable jury could conclude otherwise.  Based on the evidence of record, we cannot agree.

V.

We will vacate and remand that portion of the district court's summary judgment order of September 9, 1993 which disposes of the plaintiffs' failure to warn claims brought in negligence and strict liability.  We will also vacate that portion of the district court's summary judgment order of September 9, 1993 which disposes of the plaintiffs' defective design claims brought in negligence and strict liability, and remand for trial on the merits of the complaint.