**Shirley HITTLE and John Hittle, Individually and as Administrator of the Estate of Jessica Hittle, Deceased, Plaintiffs,**

v.

**SCRIPTO–TOKAI CORPORATION; Tokai Corporation; and JMP Mexico, S.A. de C.V., Defendants.**

No. 4:CV–99–0736.

United States District Court, M.D. Pennsylvania.

Sept. 21, 2001.

As Corrected Oct. 4, 2001.

D. Bruce Kehoe, Indianapolis, IN, John M. Humphrey, Rieders Travis Humphrey Harris Waters & Waffenschmidt, Williamsport, PA, for plaintiffs.

Carl A. Eck, Paul R. Robinson, Meyer, Darragh, Buckler BeBenik, Eck & Hall, Pittsburgh, PA, for defendants.

## MEMORANDUM

McCLURE, District Judge.

### BACKGROUND:

This is a products liability action. Before the court is plaintiffs' motion for reconsideration of the dismissal of their strict liability claims. Plaintiffs contend that there has been a recent change in the law, as evidenced by a Pennsylvania Superior Court case decided after this court's dismissal of their claims. We disagree, and will deny the motion.

On May 6, 1999, plaintiffs Shirley and John Hittle (the Hittles) commenced this action with the filing of a complaint, alleging that a fire in their home was caused by a household lighter manufactured and distributed by defendants Scripto–Tokai Corporation, Tokai Corporation, and JMP Mexico, S.A. de C.V (collectively, "Tokai"). John Hittle is the administrator of the estate of Jessica Hittle, who was fatally injured in the fire. The complaint advances legal theories of strict products liability, negligent design, negligent failure to warn, breach of warranty, and misrepre-

sentation. On December 6, 1999, we dismissed the strict liability claims under Federal Rule of Civil Procedure 12(b)(6) on the grounds that Jacob Hittle, the four-year-old child who lit the flame which caused the fire, was not an "intended user" of the lighter. Our decision was premised on the holding of *Griggs v. BIC Corp.*, 981 F.2d 1429 (3d Cir.1992), a Third Circuit case addressing that very issue.

On May 25, 2001, the Hittles filed a motion for reconsideration of the December 6, 1999 order. The motion was filed after the Pennsylvania Superior Court's April 10, 2001 decision in *Phillips v. Cricket Lighters*, 773 A.2d 802 (Pa.Super.2001), which holds, directly contrary to *Griggs,* that liability under strict liability principles does not require the use of the product by an intended user. According to the Hittles, *Phillips* supercedes *Griggs* in the former's prediction of the Pennsylvania Supreme Court's treatment of the "intended user" concept in strict liability.

## DISCUSSION:

As a preliminary matter, we note that we may and will exercise discretion to entertain the Hittles' motion for reconsideration notwithstanding the fact that it was filed some 16 months after our order dismissing the strict liability claims. Even though the Hittles technically violated Local Rule 7.10,[1] we will excuse this violation because *Phillips* was not decided until April 2001, well over a year after our dismissal order, and because the Hittles did not delay in filing their motion. *Accord Philadelphia Reserve Supply Co. v. Nowalk & Associates, Inc.*, 864 F.Supp. 1456, 1460–61 (E.D.Pa.1994) (entertaining "untimely" motion for reconsideration after state appellate court commented on the relevant issues); *Graco Children's Products v. Regalo International LLC*, No.

CIV. A. 97–CV–6885, 2001 WL 392886, at *1 (E.D.Pa. April 17, 2001).

This case raises sensitive issues relating to a federal court's duties to interpret state law. We first set out some general principles. It is axiomatic that a federal court sitting in diversity must apply state substantive law and federal procedural law. *Chamberlain v. Giampapa*, 210 F.3d 154, 158 (3d Cir.2000) (citing *Erie R.R. v. Tompkins*, 304 U.S. 64, 78, 58 S.Ct. 817, 82 L.Ed. 1188 (1938)). In this case, it is undisputed that Pennsylvania law applies. In the absence of a reported decision by the state's highest court addressing the precise issue before it, a federal court applying state substantive law must predict how the state's highest court would rule if presented with the case. *See Nationwide Mutual Ins. Co. v. Buffetta*, 230 F.3d 634, 637 (3d Cir.2000) (citation omitted). A federal court may give due regard, but not conclusive effect, to the decisional law of lower state courts. *Id.* (citation omitted). "The opinions of intermediate appellate state courts are 'not to be disregarded by a federal court unless it is convinced by other persuasive data that the highest court of the state would decide otherwise.'" *Id.* (quoting *West v. AT & T Co.*, 311 U.S. 223, 237, 61 S.Ct. 179, 85 L.Ed. 139 (1940)). "In predicting how the highest court of the state would resolve the issue, [a federal court] must consider 'relevant state precedents, analogous decisions, considered dicta, scholarly works, and any other reliable data tending convincingly to show how the highest court in the state would decide the issue at hand.'" *Id.* (quoting *McKenna v. Ortho Pharm. Corp.*, 622 F.2d 657, 663 (3d Cir.1980)).

From the above recitation of the law, it is apparent that in general, a federal court

---

1. Local Rule 7.10 states: "Any motion for reconsideration or reargument shall be filed within ten (10) days after the entry of judgment, order or decree concerned." LR 7.10.

applying state law, when faced with an absence of state supreme court precedent, must predict how the state supreme court would decide the issue before it. Less clear, however, is the extent to which a federal district court is bound by its court of appeals' interpretation of state law, especially if a subsequent state appellate court contradicts the federal appellate court. The Third Circuit has not given very much guidance on the subject, but has suggested that the only law that is binding on a federal court is the jurisprudence of the state supreme court, and that even a decision by a federal court of appeals does not bind a district court. *See, e.g., Aceto v. Zurich Insurance Co.,* 440 F.2d 1320, 1321 (3d Cir.1971) ("No one may properly rely upon what we have held as more than persuasive on a question of Pennsylvania law so long as the Supreme Court has not ruled upon that legal question."); *but see Lennig v. New York Life Insurance Co.,* 130 F.2d 580, 581 (3d Cir. 1942) (indicating that where a federal court of appeals interprets state law, a district court is bound by that interpretation at the retrial of the case unless it is clear by subsequent statute or binding state court decision that the court of appeals erred). District courts in this circuit have been inconsistent, but it has been written that a district court is bound by its court of appeals on questions of state law unless "later state court decisions indicate that the Court of Appeals' earlier prediction of state law was in error." *Stepanuk v. State Farm Mutual Automobile Insurance Co.,* No. CIV. A. 92–6095, 1995 WL 553010, at *2 (E.D.Pa. September 19, 1995) (collecting cases). We will assume without deciding that we are *not* strictly bound by *Griggs* and that we are free to make a contrary prediction.

### Griggs

The *Griggs* decision, written in 1992 by a three-judge panel, featured facts similar to those of the instant case. The Griggses sued BIC Corporation on behalf of their 11–month–old son Zachary, who was injured when his three-year-old stepbrother Kenneth started a fire in the their home by igniting a BIC disposable butane cigarette lighter. The Griggses asserted claims of strict liability and negligent design of the lighter, specifically contending that the lighter should have been designed to be "childproof." The Third Circuit, applying Pennsylvania law and Section 402A of the Restatement (Second) of Torts, found that the Griggses could not sustain a claim for design defect because three-year-old Kenneth was not an intended user of the lighter.

The court began by stating that the first task of a district court in analyzing a claim for a design defect is to determine whether, under the Pennsylvania Supreme Court's interpretation of § 402A as set forth in *Azzarello v. Black Bros. Co.,* 391 A.2d 1C20 (Pa.1978), the risk of loss should fall on the manufacturer as a matter of law. *Griggs,* 981 F.2d at 1432. In other words, the court must decide whether the product is "unreasonably dangerous." *See id.* at 1432 n. 4 (citations omitted). Only after the court decides this issue in the affirmative may the case be submitted to the jury for consideration of the facts. *Id.* at 1432 (citation omitted). That is, "[a] judicial determination that Pennsylvania's social policy does not support placing the risk of loss on the manufacturer in a strict products liability case is the equivalent of a judicial conclusion that the product is not defective under strict products liability law...." *Id.* at 1433. Applying *Azzarello,* the court stated that "the existence of a defect is intimately related to the product's intended use because the product is defective only if it left the supplier's control lacking any element necessary to make it safe for its intended use or possessing any

feature that renders it unsafe for the intended use." *Id.* (citing *Azzarello*, 391 A.2d at 1027). The *Griggs* court designated the "intended use" inquiry as the "*Azzarello* approach," and predicted that the Pennsylvania Supreme Court would adopt this approach in order to make the "threshold determination" that is necessary before the case is submitted to the jury. *Id.* at 1433 n. 6 (citations omitted).

The court then applied the "intended use" approach to the lighter, agreeing with the trial court that "a product may not be deemed defective unless it is unreasonably dangerous to *intended users.*" *Id.* at 1433 (citation omitted). The circuit court found that Kenneth was not an intended user of the lighter because he was only three years old. *Id.* The Griggses contended that the district court erred when substituting *intended user for intended use.* The Third Circuit rejected this argument: "This is an illusory distinction ... because the concept of intended use impliedly encompasses the participation of an intended user. Thus, because children are not intended users, BIC is not strictly liable." *Id.* The Griggses also maintained that Kenneth did in fact use the lighter for its intended use, i.e., to produce a flame. The Third Circuit responded that "this suggestion requires a convoluted reading of the standard that is nowhere suggested by the Pennsylvania courts' application." *Id.* at 1433 n. 7.

Finally, the *Griggs* court declared that even if use by a child was foreseeable, BIC was free from liability: "Alternatively, the Griggses seem to be trying to equate intended use with expected use, which then allows them to connect children with lighters by using foreseeability evidence, where something that may be foreseeable may be expected. Foreseeability, however, plays no part in the initial determination of defect in strict liability." *Id.* (citing *Berkebile v. Brantly Helicopter Corp.*, 462 Pa. 83, 337 A.2d 893, 900 (1975)).

As applicable to the Hittles' strict liability claims, the *Griggs* opinion stands for the proposition that, under Pennsylvania law, the manufacturer of a disposable butane lighter is not liable in strict products liability for injuries caused when a child uses the lighter. We employed this reasoning in dismissing the Hittles' claims of design defect under strict products liability.[2] (*See* Memorandum and Order dated December 6, 1999, Rec.Doc. No. 14.)

### Post–*Griggs*

Because more than eight years elapsed between *Griggs* and the contrary holding of *Phillips*, it is necessary to summarize the evolution of Pennsylvania law between the two decisions. The Third Circuit case of *Metzgar v. Playskool, Inc.*, 30 F.3d 459 (3d Cir.1994) explained the difference between an intended user and a foreseeable user, directing courts to focus on the intent of the manufacturer as opposed to what the manufacturer should have foreseen. *Id.* at 463–64 (citing *Griggs*, 981 F.2d at 1432–33).

The Third Circuit subjected *Griggs* to heavy scrutiny in *Surace v. Caterpillar, Inc.*, 111 F.3d 1039 (3d Cir.1997). The *Surace* panel attempted to clarify the roles of the court and the jury in the ultimate determination of whether a product is de-

---

**2.** In *Griggs*, as in the instant case, the plaintiffs were not directly *using* the lighter, but rather were in the house when the product caused their injuries. The Pennsylvania Supreme Court has indicated that recovery may be appropriate under similar circumstances. *See Webb v. Zern*, 422 Pa. 424, 220 A.2d 853,

854–55 (1966) (allowing a plaintiff to plead a § 402A claim after he was injured by an exploding beer keg purchased by his father). The *Griggs* court was thus entitled to focus on Kenneth, the "user" of the lighter, even though Kenneth was not the one injured. We will do the same, focusing on Jacob.

fective. *Surace* concluded that the initial judicial determination regarding the risk of loss should be done by employing a risk-utility approach that is also found in *Azzarello*.[3] The *Griggs* court obviously differed from the Surace court in that it utilized the "intended use" approach to make the initial determination. The *Surace* panel predicted that the Pennsylvania Supreme Court would adopt *Azzarello's* risk-utility test to make the threshold judicial determination, *id.* at 1045, and expressly held that to the extent that *Griggs* rejected the risk-utility inquiry in the initial determination, it had no precedential value because it was contrary to the previous Third Circuit case of *Motter v. Everest & Jennings, Inc.*, 883 F.2d 1223 (3d Cir.1989), which indicated that the risk-utility analysis is the correct approach to the "unreasonably dangerous" inquiry. *Surace*, 111 F.3d at 1046 n. 6 (citing *Motter*, 883 F.2d at 1227).

This court addressed the tensions between *Griggs* and *Surace* in *Shouey v. Duck Head Apparel Co., Inc.*, 49 F.Supp.2d 413 (M.D.Pa.1999). In *Shouey*, we were faced with the question of whether *Griggs* controlled the disposition of a motion for summary judgment filed by a manufacturer of a cigarette lighter and relating to a claim of strict products liability. We held that *Griggs* applied, and that despite some imprecise language in *Griggs*, *Griggs* and *Surace* are not irreconcilable. Specifically, we noted that the question of whether someone is an intended user fits squarely within the required risk-utility approach to the "unreasonably dangerous" inquiry, and that a finding that a user was not an intended user supports the conclusion that the product was not unreasonably dangerous. *Id.* at 423–429 (citations omitted).

The Pennsylvania Superior Court, before its ruling in *Phillips*, twice considered whether a manufacturer may be liable for a design defect if the product's user was not an intended user. The case giving the subject the most attention is *Riley v. Warren Manufacturing, Inc.*, 455 Pa.Super. 384, 688 A.2d 221 (1997), a decision of a panel of the Superior Court. In *Riley*, young Coby Riley was injured when he placed his hand into a piece of farm machinery that was being operated by his grandfather, an employee of a company called AgCom. The *Riley* panel affirmed the trial court's decision to direct a verdict for the defendant. The court proceeded to make its "unreasonably dangerous" inquiry, stating that "[t]he question of whether a product is unreasonably dangerous is a question of law." *Id.* at 224 (citing *Azzarello*, 391 A.2d at 1026). In analyzing this threshold issue, the court initially employed a risk-utility analysis. The Superior Court scrutinized the testimony of the plaintiffs' expert and agreed with the trial court that "the evidence was inadequate as a matter of law to show that the product was unreasonably dangerous." *Id.* at 226.

The panel did not stop there. It went on to state that "even if the [trial] judge had erred in peremptorily taking the issue of whether the trailer was unreasonably dangerous from the jury, there was an *alternative* basis for doing so . . . ." *Id.* at 226 (emphasis added). Relying on *Schriner v. Pennsylvania Power and Light Co.*, 348 Pa.Super. 177, 501 A.2d 1128 (1985), the panel separated a § 402A claim into five elements, and stated that Coby was required to prove, *inter alia*, that he was a "user" of the product. *Riley*, 688 A.2d at 227 (citing *Schriner*, 501 A.2d at 1132). Citing favorably to, *inter alia*, *Griggs*, the

---

**3.** The *Surace* court focused on language in *Azzarello* that "suggest[s] that a court determine whether 'the utility of a product out-weigh[s] the unavoidable danger it may pose.'" *Surace*, 111 F.3d at 1045 (citing *Azzarello*, 391 A.2d at 1026).

court distinguished the concepts of "foreseeable user" and "intended user," noting that only the latter may recover under § 402A. *Id.* at 227–28 (citations omitted). Because Coby was a "reasonably obvious unintended user" of the machine, he could not successfully claim relief:

> In the present case Coby was clearly ... a reasonably obvious unintended user. The trailer was a sophisticated piece of industrial machinery, to be used by an educated group of industrial consumers. Its normal and intended use was to be by the trained employees of AgCom who were responsible for hauling the bulk feed to farms. All the expert witnesses agreed, including appellants' expert, that the trailer was not intended to be used by or around children. Thus, the trial court correctly concluded that AgCom and its employees, as the consumers and operators of the product, were the "users" who were afforded protection under § 402A. Because a child was never the intended consumer of the product and had no reason to come in contact with it, Coby was clearly an "obvious unintended user." Consequently, § 402A relief was not available to him.

*Id.* at 229 (citation omitted).

The court concluded by invoking policy considerations:

> Additionally, there are certain risks that as a matter of law, or social policy, cannot support imposition of strict liability. To hold Warren strictly liable to someone who was not an intended user, who was injured by a product which was not unreasonably dangerous, would effectively make Warren the insurer of that person. This was not the intent of the Supreme Court in adopting Restatement (Second) of Torts, § 402A.

*Id.* (citation omitted). As emphasized above, the Superior Court in *Riley* suggested that the risk-utility analysis and the determination of whether the user was an intended user are separate, alternative approaches in considering whether to relieve a manufacturer of liability as a matter of law.

*Riley* is not totally clear on whether the "user" inquiry is part of or separate from the "unreasonably dangerous" inquiry. For example, the court suggested that its finding that Coby was not a user was an "alternative basis" for taking the "unreasonably dangerous" issue from the jury. *Id.* at 226. On the other hand, when the *Riley* court listed the elements of a § 402A claim, "unreasonably dangerous" and "user" were separate. *Id.* at 226–27 (citing *Schriner*, 501 A.2d at 1132). Notwithstanding the separation of the concepts as stated by *Riley* and *Schriner*, we will take *Riley* at its word and find that it stands for the proposition that the "user" analysis is an independent method to determine whether the product is "unreasonably dangerous." *See Shouey*, 49 F.Supp.2d at 427 (stating that *Riley* indicates that the question of whether a user is an intended user is part of the "unreasonably dangerous" analysis). In any event, *Riley* supports the proposition that if a user is an obvious unintended user, the manufacturer is not liable in strict liability.

The final post-*Griggs*, pre-*Phillips* Superior Court case commenting on the "intended user" issue was *Weiner v. American Honda Motor Co., Inc.*, 718 A.2d 305 (Pa.Super.1998), in which it is noted, albeit in dicta, that *Riley* supports the proposition that a manufacturer is not liable in strict liability when the injured person is not an intended user of the product. *Id.* at 309 (citing *Riley*, 688 A.2d at 229–30).

### *Phillips*

With all of this in mind, we turn to *Phillips*, the recent decision written by

another panel of the Superior Court. The issue in *Phillips* was akin to the one in *Griggs*, i.e., whether strict liability is appropriate when a child uses a lighter to start a fire. The court specifically focused on whether a user of a product must be an intended user in order to support a finding that the product was "unreasonably dangerous." It answered this question in the negative. The court noted that "[n]one of [the] elements [in a products liability action] requires the product to be used by an 'intended user.'" *Phillips*, 773 A.2d at 810. It pointed out that *Azzarello* stated nothing about an "intended user," and disagreed with the trial court's conclusion that "intended use" necessarily encompasses use by an intended user. *Id.* at 811–813 (citations omitted). According to the panel, if such an analysis were correct, "manufacturers could limit recovery only to a purchaser, who arguably is the only 'intended user' of a product." *Id.* at 813. The court cited as textual support for its conclusion the language in § 402A. Specifically, it cited comment 1, which states that the user of a product need not necessarily be the purchaser, and that "he may be a member of the family of the final purchaser...." *Id.* at 811 (citing Restatement (Second) of Torts § 402A, *comment 1*).

█ The court next attempted to distinguish *Riley*, the Pennsylvania Superior Court case which denied recovery to a plaintiff based on the conclusion that he was not an intended user of a piece of farm machinery. In analyzing the *Phillips* panel's discussion of *Riley*, we must keep in mind the general principle that a panel of the Superior Court is not permitted to overrule the precedent of a previous panel of the Superior Court. *Commonwealth v. Cooper*, 710 A.2d 76, 79–80 (Pa.Super.1998) (citing *Commonwealth v. Taylor*, 437 Pa.Super. 102, 649 A.2d 453, 455 (1994)).

Thus, to the extent that *Phillips* is inconsistent with *Riley*, *Riley* controls.

The *Phillips* panel enunciated three perceived differences between its case and *Riley*. First, the court, in seeking to reconcile *Riley's* decree that strict liability is inappropriate if the plaintiff was a "reasonably obvious unintended user," attempted to distinguish the cases' respective products, explaining that the machine in *Riley* was of a type such that children had no reason to come into contact with it, while *"lighters are intended to be used around children and children have reason to come into contact with them."* *Phillips*, 773 A.2d at 812 (emphasis in original). *Phillips* explained its reasoning behind making this distinction by pointing to the following language in *Riley*:

> In the present case Coby was clearly ... a reasonably obvious unintended user. The trailer was a sophisticated piece of industrial machinery, to be used by an educated group of industrial consumers. Its normal and intended use was to be by the trained employees of AgCom who were responsible for hauling the bulk feed to farms. All the expert witnesses agreed, including appellants' expert, that the trailer was not intended to be used by **or around children.** Thus, the trial court correctly concluded that AgCom and its employees, as the consumers and operators of the product, were the "users" who were afforded protection under § 402A. Because a child was never the intended consumer of the product and **had no reason to come in contact with it,** Coby was clearly an "obvious unintended user." Consequently, § 402A relief was not available to him.

*Riley*, 688 A.2d at 229 (citation omitted) (emphasis added). The *Phillips* court read *Riley* as supporting the proposition that a plaintiff may be a "user" of a prod-

uct if the product is intended for use around children and children have reason to be near the product:

> [I]ndeed, the language in *Riley* actually *supports* Appellant's position in this case since it suggests that if the product is to be used in a household around children and children have reason to come into contact with the product, children will be a user or consumer of the product under the Restatement.

*Phillips*, 773 A.2d at 812–13. This language indicates that the *Phillips* panel sought to expand the definition of "intended user" to include the user who has reason to come into contact the product and the user around whom the product is intended to be used. The *Phillips* court also noted that while Coby Riley was using the farm equipment in a way that it was not intended to be used, the child in *Phillips* used the lighter as intended by using it to create a flame. *Id.* at 813. The third way, according to the *Phillips* panel, that its case differed from *Riley* was that while the *Riley* court found for the defendant based on multiple factors, i.e., the risk-utility analysis and the "unintended user" approach, the trial court in *Phillips* found for the manufacturer based solely on the fact that children are unintended users of lighters. That is, "[t]he trial court did not employ the risk-utility test required under Pennsylvania law." *Id.* at 814 (citing *Riley*, 688 A.2d at 230).

We do not agree with the *Phillips* court's analysis in a number of respects. Initially, we disagree with *Phillips'* declaration that *Riley* based its conclusion on the aggregate of the risk-utility and "intended user" analyses. While the *Riley* court certainly listed reasons why it found for the manufacturer, nowhere did it state that its finding was dependent on all of those reasons. *Phillips'* statement that the trial court erred when it did not perform the "required" risk-utility analysis is inconsistent with *Riley*, which indicates that such an analysis is not always necessary. Indeed, as stated above, the *Riley* court found the "intended user" approach to be an "alternative basis" for taking the "unreasonably dangerous" issue from the jury. *Riley*, 688 A.2d at 226. It logically follows that even had the *Riley* court not engaged in the risk-utility analysis, it could have found as it did based solely on the "intended user" analysis. This conclusion is fortified by the fact that *Riley* did not conflate the two analyses at all, but rather relied on separate pieces of evidence in coming to its respective conclusions.

We recognize that the Third Circuit has shared *Phillips'* opinion that the risk-utility analysis is required under Pennsylvania law. *See Surace*, 111 F.3d at 1046 n. 6 (citation omitted). To that effect, this court has previously determined that the question of whether someone is an intended user falls within the risk-utility analysis, and that a finding that a person is an unintended user would tend to cause these factors to weigh in favor of the product being found not unreasonably dangerous. *Shouey*, 49 F.Supp.2d at 423–429 (citations omitted). It follows that whether we abide by *Riley's* approach and treat the risk-utility and "intended user" analyses as separate and independent, or we adhere to the federal courts' interpretation and find that if the plaintiff is an unintended user, then the product is not unreasonably dangerous, the "intended user" approach is appropriate.

Shifting to the substance of the "intended user" analysis, we disagree with *Phillips* that *Riley* supports the proposition that a manufacturer may be liable to an unintended child user if the child had reason to come into contact with the manufacturer's product or the product was intended to be used around children. *Riley*

actually denounces such a principle, maintaining that it inappropriately invokes foreseeability. The court in *Riley* rejected the plaintiffs' argument that Coby was a user simply by coming into contact with the machine and placing his hand inside it. Citing *Metzgar* and *Griggs,* it discussed the difference between a foreseeable user and an intended user:

> Simply put, foreseeability is a factor of the "reasonable man" standard in negligence and has no place in a products liability case. To allow a jury to consider the foreseeable consequences of a manufacturer's actions and knowledge would undermine the policy considerations that have continuously led the Supreme Court to hold that a manufacturer is not an insurer of his product's safety. Indeed, the term "unreasonably dangerous" was included in § 402A specifically to obviate any contention that a manufacturer of a product with inherent possibilities of harm would become automatically responsible for every harm that could conceivably happen from the use of the product. Strict products liability law is premised on the concept of enterprise liability for casting a defective product into the stream of commerce because manufacturers market their product for use and because they have a better opportunity to control the defect, they should be responsible for injuries to those who ultimately use or consume their product. The focus is on the nature of the product and **the consumer's** reasonable expectations with regard to the product. In retrospect, any possible harm is foreseeable. However, we do not want to conflate the "foreseeable user" with the "intended user" as there are many products which are dangerous to a foreseeable user but would be rendered significantly less useful if they were made injury-proof. Thus, the relevant inquiry [is not] foreseeability of harm [sic], but whether that harm was to an intended user.

*Riley,* 688 A.2d at 228 (citations omitted). *Riley* clearly supports the proposition that the probability of contact with the product is not relevant in determining whether the plaintiff is a "user" under the Restatement. The user must be an *intended* user, not a *foreseeable* user.

In addition, *Phillips'* suggestion that "intended use" does not imply use by an intended user contradicts language present in *Riley. Riley* discussed the intended use of the machinery: "The trailer was a sophisticated piece of industrial machinery, to be used by an educated group of industrial consumers. Its normal and intended use was to be by the trained employees of AgCom who were responsible for hauling the bulk feed to farms." *Id.* at 229. *Riley* indeed suggests that the concept of intended use necessarily encompasses use by an intended user. Just as the machinery's normal and intended use was to be by the trained employees of AgCom, a lighter's normal and intended use is to be by an adult.

As stated above, the *Riley* court found Coby to be a "reasonably obvious unintended user" of the farm machinery. *Phillips* suggested that necessary prerequisites to this conclusion were that the machinery was not intended to be used around children and/or that children had no reason to come into contact with the machinery. On the other hand, according to *Phillips,* because lighters are intended to be used around children and children have reason to come into contact with lighters, children are not "reasonably obvious unintended users" of lighters. *Phillips,* 773 A.2d at 812–13 (citing *Riley,* 688 A.2d at 229). While we recognize that the *Riley* panel included the issue of the machinery's use near children in its analysis of whether Coby was a "reasonably obvi-

ous unintended user" of the machinery, we believe that the above-quoted language in *Riley,* which at different points (1) stressed the need to separate the concept of the intended user from that of the foreseeable user; and (2) equated a product's intended use with its intended user, demonstrates that the court's determinative inquiry was indeed whether the user was one who was obviously *intended* by the manufacturer. It is undisputed that a lighter manufacturer does not intend that children will use its lighters; as such, a child is a reasonably obvious unintended user of a lighter.

 To the extent that *Phillips* is inconsistent with *Riley,* it should be given minimal value. The most important difference for our purposes is that *Phillips* gives *Riley* an impermissibly narrow reading as it relates to the concept of the "reasonably obvious unintended user." This logically implies that *Phillips* assigns an impermissibly broad definition to the concept of the "intended user." It follows that we as a federal court should assign it minimal value in predicting Pennsylvania Supreme Court's hypothetical outcome regarding the instant case. Even if *Phillips* did not conflict with *Riley,* we would find it to be an incorrect prediction of the tendencies of the Pennsylvania Supreme Court, as it inappropriately introduces foreseeability into a strict liability analysis. A finding that the user of a product was not one intended by the manufacturer can relieve the manufacturer of liability. *Griggs* stands, as does our decision to dismiss the Hittles' strict liability claims. Jacob Hittle was not an intended user of the lighter; Tokai should not be held liable in strict liability.

### Conclusion

Based on the foregoing reasons, the Hittles' motion for reconsideration will be denied. An order consistent with this memorandum will be issued.